Jose Piedad SANCHEZ,
Plaintiff–Appellant,

v.

Bill ROWE, In his Individual and Official Capacities as a U.S. Border Patrol Agent, et al. Defendants–Appellees.

No. 87–1439.

United States Court of Appeals,
Fifth Circuit.

April 18, 1989.

See also, D.C., 651 F.Supp. 571.

Lee J. Teran, San Antonio, Tex., for plaintiff-appellant.

Robert K. Rasmussen, Atty., U.S. Dept. of Justice, Appellate Staff, William Kanter, Atty., Civil Div., Washington, D.C., for defendants-appellees.

Before CLARK, Chief Judge, TIMBERS * and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

This case raises issues concerning the recovery of costs and attorney's fees under the Equal Access to Justice Act when the underlying claim is based on the Federal

* Circuit Judge of the Second Circuit, sitting by designation.

1. 28 U.S.C. § 2671 et seq.

2. Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Tort Claims Act. We hold that an award of attorney's fees and expenses is barred as a matter of law under 28 U.S.C. 2412(b) and (d)(1)(A), but remand for an award of costs under 28 U.S.C. 2412(a).

I.

Plaintiff Jose Sanchez prevailed at trial on his claim against the United States under the Federal Tort Claims Act [1] and on his *Bivens* claim [2] against Bill Rowe, an agent of the U.S. Border Patrol, Immigration and Naturalization Service. The court found that Rowe maliciously beat Sanchez after arresting him in Vernon, Texas. Because a judgment under the FTCA bars a plaintiff from also recovering against the government employee whose actions gave rise to the claim,[3] the court ordered Sanchez to elect between the two claims. Pursuant to his election, judgment was entered against the United States for $25,000 in compensatory damages on the FTCA claim. Thereafter Sanchez submitted a motion for attorney's fees, expenses, and costs under the Equal Access to Justice Act.[4] Without explanation, the district court denied the motion and Sanchez appealed. We remanded the case to the district court for a statement of reasons why the motions were denied. Now with the benefit of its opinion, we consider Sanchez's attack.

II.

■ A prevailing party may recover attorney's fees and expenses against the United States on only two bases: The trial court has the discretion to award fees and expenses when they would be available to any other party under common law or a specific statutory provision. In addition, the trial court shall award fees and expenses in cases "other than [those] sounding in tort" unless the court finds that the

3. See 28 U.S.C. § 2676.

4. 28 U.S.C. §§ 2412(b) & (d)(1)(A).

government's position was substantially justified. Sanchez cannot recover fees and costs against Rowe personally under the EAJA. To recover under that Act one must be a "prevailing party."[5] The judgment in a FTCA action constitutes "a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim."[6] Since Sanchez elected to recover against the United States under the FTCA rather than against Rowe on the basis of his constitutional claims, he did not "prevail" against Rowe and cannot meet the threshold requirement of the Act. We therefore affirm the district court's denial of attorney's fees, expenses, and costs against Rowe.

### A.

Section 2412(b) of the EAJA authorizes an award of attorney's fees against the government, unless expressly prohibited by statute, when such fees would be available against other parties at common law. Under the "American Rule," established almost two hundred years ago by the Supreme Court[7] and still adhered to,[8] the prevailing litigant ordinarily may not collect attorney's fees from the loser. Sanchez relies on a well-established exception that allows recovery of attorney's fees "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' "[9] With support from the Ninth Circuit,[10] Sanchez claims that Rowe's malicious conduct in beating him consti-

tutes bad faith under this exception. With support from the Sixth[11] and Eleventh[12] Circuits, the government contends that district court correctly found as a matter of law that "bad faith in the underlying conduct alone is insufficient for an award of attorney's fees under the common law;" and that, even if an award of attorney's fees were available based on the bad faith of the underlying conduct, such an award is barred by the FTCA prohibition against punitive damages.[13]

To further buttress his contention that the malice with which a tort was inflicted can itself constitute the bad faith requisite to an award of attorney's fees, Sanchez points to the Supreme Court's statement in *Hall v. Cole* "that 'bad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation."[14] *Hall*, however, was decided on the common-benefit exception to the American Rule, not on the bad-faith exception.[15]

In *Vaughan v. Atkinson*,[16] the Supreme Court allowed a seaman to recover attorney's fees as an item of damages for the shipowner's failure to pay maintenance and cure. Fees were awarded on the basis of the shipowners' bad-faith response to the seaman's underlying claim. The Court explained that the shipowners

> were callous in their attitude, making no investigation of [the seaman's] claim and by their silence neither admitting nor denying it. As a result of that recalci-

---

**5.** *Id.*

**6.** 28 U.S.C. § 2676.

**7.** *See Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306, 1 L.Ed. 613 (1796).

**8.** *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983); *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 271, 95 S.Ct. 1612, 1628, 44 L.Ed.2d 141 (1975).

**9.** *Alyeska*, 421 U.S. at 258–59, 95 S.Ct. at 1622 (quoting *F.D. Rich Co. v. United States ex rel. Indust. Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)).

**10.** *Lauritzen v. Lehman*, 736 F.2d 550 (9th Cir.1984).

**11.** *Shimman v. International Union of Operating Eng'rs*, 744 F.2d 1226, 1230 (6th Cir.1984), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985).

**12.** *Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1014 (11th Cir.1985).

**13.** *See* 28 U.S.C. § 2674.

**14.** 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973).

**15.** *Id.*

**16.** 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).

trance, [the seaman] was forced to hire a lawyer and go to court to get what was plainly owed him under laws that are centuries old. The default was willful and persistent.[17]

Similarly, in cases the Supreme Court has cited as examples of the bad-faith exception, the bad-faith conduct was in response to the underlying claim.[18] As the Sixth Circuit has observed, "[c]are must be taken to distinguish a defendant's bad faith in necessitating that an action be filed or in maintaining a defense from a defendant's bad faith in the acts giving rise to the claim."[19] While there is some authority to the contrary, we agree with Moore's treatise that the better view is that the requisite bad faith may be found only in bringing an action or causing an action to be brought.[20]

We have allowed fees only for bad-faith conduct related to the litigation, either in response to a claim before a suit has been filed or in the course of the litigation after a suit has been filed. In *Carter v. Noble* we held that when a defendant's "patently frivolous claim" forced a plaintiff to employ counsel and file an action, attorney's fees were awardable.[21] In *Baker v. Bowen,*[22] in the context of an administrative adjudication, we also relied on litigation-related conduct as requisite to the allowance of fees. This is consistent with our characterization of the Supreme Court's bad-faith cases such as *Vaughan* as allowing attorney's fees "against defendants whose prelitigation conduct left plaintiff no alternative but litigation, despite defendants' duty to deal fairly with the respective plaintiffs."[23] We reject Sanchez's reliance on our decision in *Miller v. Carson,*[24] a case involving a fee award based on a statutory right, not federal common law.

Extending the bad-faith exception to include bad faith in the acts giving rise to the substantive claim is inconsistent with the rationale behind the American Rule. As the Sixth Circuit explained in *Shimman v. International Union of Operating Engineers:*

> By refusing to penalize a litigant whose judgment concerning the merits of his position turns out to be in error, the American Rule protects the right to go to court and litigate a non-frivolous claim or defense. The unsuccessful litigant is not penalized even when an injured party whose claim is upheld is not made completely whole because of the cost of litigation. The unsuccessful litigant may be penalized, however, if the litigation was not maintained in good faith. In such a case, the successful party has ordinarily suffered two wrongs: one in the events giving rise to the litigation, and another in the wrongful conduct or instigation of the litigation. Attorney fees incurred while curing the original wrong are not compensable because they represent the cost of maintaining open access to an equitable system of justice. That policy is not served, however, by denying fee awards when the justice system has been wrongfully used. There is no need to maintain open access for those who abuse the system. The bad faith exception applies when the need for open access is absent....

17. *Id.* at 530–31, 82 S.Ct. at 999–1000.

18. *See, e.g., F.D. Rich Co. v. United States ex rel. Indust. Lumber Co.,* 417 U.S. 116, 129 n. 17, 94 S.Ct. 2157, 2165 n. 17, 40 L.Ed.2d 703 (1974) (citing *McEnteggart v. Cataldo,* 451 F.2d 1109 (1st Cir.1971), *cert. denied,* 408 U.S. 943, 92 S.Ct. 2878, 33 L.Ed.2d 767 (1972) (state college's bad faith refusal to give reasons for failing to renew non-tenured professor's contract); *Bell v. School Board,* 321 F.2d 494 (4th Cir.1963) (school officials' evasion and obstruction in school desegregation claim)).

19. *Shimman v. International Union of Operating Eng'rs,* 744 F.2d 1226, 1230 (6th Cir.1984), *cert.*

*denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985).

20. *See* 6 Moore's Federal Practice ¶ 54.78[3], at p. 54–506 (2nd ed. 1987).

21. 526 F.2d 677, 679 (5th Cir.1976).

22. 839 F.2d 1075 (5th Cir.1988).

23. *Barton v. Drummond Co.,* 636 F.2d 978, 985 (5th Cir.1981).

24. 563 F.2d 741 (5th Cir.1977).

The rationale behind the American Rule remains intact when there is bad faith in the event underlying the substantive claim. A person who harms another in bad faith is nonetheless entitled to defend a lawsuit in good faith. "A party is not to be penalized for maintaining an aggressive litigation posture...." [25]

■ We hold that the requisite bad faith may be found in a party's conduct *in response* to a substantive claim, whether before or after an action is filed, but it may not be based on a party's conduct *forming the basis* for that substantive claim. Therefore Rowe's viciousness cannot itself justify an award of attorney's fees. As Sanchez conceded at oral argument, the government's litigation posture was not in bad faith, so there is no basis for him to recover fees under § 2412(b).

Having found that the bad-faith exception is inapplicable, we do not reach the issue whether an award of attorneys fees would also be barred by the FTCA prohibition against punitive damages.

### B.

Section 2412(d)(1)(A) of the EAJA requires a court to award attorney's fees against the United States to any prevailing party "in any civil action (other than cases sounding in tort) ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." The district court found that Sanchez's FTCA cause of action was one "sounding in tort" and that, therefore, it did not warrant an award. Sanchez alleges that Agent Rowe committed a constitutional tort and that such torts are not considered part of the exception to recovery under subsection (d)(1)(A).

Even if attorney's fees are recoverable for constitutional torts under subsection (d)(1)(A), a matter we do not decide, Sanchez's cause of action was based on the FTCA, not on a constitutional violation. Under the Act, the United States is liable for the acts of its employees only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." [26] The United States relinquishes sovereign immunity only for those torts recognized by the appropriate state law and actionable against private parties. We agree with the Second and Eleventh Circuits that suits for violations of federal constitutional rights, even though tortious in nature, are not within the scope of the FTCA.[27] Because "[b]y definition constitutional torts are not based on state law," [28] the FTCA does not provide a cause of action for constitutional torts.

This position is supported by the Supreme Court's discussion of the difference between a FTCA and a *Bivens* claim. In *Carlson v. Green*,[29] the Court held that a *Bivens* remedy is available even when the allegations could also support a FTCA suit. It reasoned that a FTCA suit is not a sufficient alternative to a *Bivens* suit for unconstitutional actions resulting in physical injury because "an action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward." [30] The Court explained that unless a party could bring a Bivens action instead of a FTCA action "violations by federal officials of federal constitutional rights [would] be left to the vagaries of the laws of the several States." Implicit in this conclusion is the Court's determination that the "law of the place" referred to in the FTCA does not include federal constitutional torts.

**25.** 744 F.2d 1226, 1231–32 (6th Cir.1984) (quoting *Lipsig v. National Student Mktg. Corp.,* 663 F.2d 178, 180–81 (D.C.Cir.1980)), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985).

**26.** 28 U.S.C. § 1346(b).

**27.** *McCollum v. Bolger,* 794 F.2d 602, 608 (11th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987); *Birnbaum v. United States,* 588 F.2d 319, 327–28 (2d Cir.1978).

**28.** *McCollum,* 794 F.2d at 608.

**29.** 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

**30.** *Id.* at 23, 100 S.Ct. at 1474.

█ Sanchez's FTCA claim is and indeed must be predicated, not on a constitutional tort, but on Texas tort law. While he prevailed on his constitutional *Bivens* claim against Rowe, he elected to have judgment entered on his FTCA claim. He cannot now abandon his election and resurrect his *Bivens* claim in order to recover attorney's fees. The trial court therefore correctly denied Sanchez fees under section 2412(d)(1)(A).

### III.

The government concedes that the trial judge erred in disallowing all costs, but contends that Sanchez seeks recovery for numerous items not recoverable as costs. Under the EAJA, the district court may award those costs enumerated in 28 U.S.C. § 1920 against the United States.[31] Since the district court made no findings on this issue, we remand for a determination of appropriate costs.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.