WALTER H. ANGELL *vs.* LOUISE SHIERSON ANGELL.

MARCH 19, 1940.

PRESENT: Flynn, C. J., Moss, Baker and Condon, JJ.

Moss, J.   This is a suit in equity brought by a husband against his wife, soon after withdrawing from their common home and bringing a petition for divorce because of alleged cruel and abusive treatment by her.   In his bill of complaint he seeks to have himself adjudged to be entitled in fee simple to an undivided half interest in certain real estate now standing in her name alone and to a half interest in certain intangible personal property held by her as her own.

The cause was heard in the superior court on the bill, answer, replication and proof; and the justice by whom it was heard filed a rescript in which he discussed the evidence and found that it did not establish, by a fair preponderance,

that at or about the time of their marriage the parties had entered into an oral agreement relative to his earnings and their use, as alleged by the husband in his bill.

The trial justice in his rescript also found, in substance and effect, that the husband at the time of the marriage, on April 29, 1915, had accumulated no means and that the wife had $400; that he was then in the employment of a street railway company and continued to be so and in receipt of weekly wages until March, 1936, when he received serious injuries in the course of such employment, by reason of which he has since been unable to work at such labor and has been receiving $16 per week under the workmen's compensation act; that from his marriage and down to the time of the separation above mentioned, he turned over his wages and compensation to his wife and let her control the expenditure of them; and that they have one son, born a few years after their marriage.

The trial justice also found in his rescript that although some of the husband's earnings may have gone into some of the wife's investments or into repairs on some real estate standing in her name, the evidence is not sufficient to show what fractional interest, if any, he equitably had in any of the wife's holdings; that the court could not find that any part of such holdings is being held by her in trust for the complainant; and that the latter therefore is not entitled to the relief for which he prays.

Thereafter a decree was entered that the bill of complaint be denied and dismissed. The complainant in due time filed an appeal therefrom, in which the reasons stated and now relied upon are, in effect, that the decree is against the evidence and the weight thereof and that it is against the law. The cause is now before us upon this appeal.

In discussing the facts, the testimony of the respondent will be accepted as correct, since the trial justice clearly

believed that testimony, which was not contradicted except in some parts by the complainant, and the rescript and decree were in her favor.

The parcels of real estate that figure in the cause are all located in the city of Providence. The first parcel is on West River street and was a wedding present to both of the parties from the wife's mother, who insisted on putting it in both their names as joint tenants. It was held by them for about fourteen years, and rented, yielding little net income, and then was sold for $1250.

This sum was deposited in an account, in the wife's name only, in a Pawtucket bank. It was later used, apparently with his consent, to buy an automobile costing about $1000 and put into her sole name, and in erecting a garage upon a parcel of real estate on Pettis street, the title to which then stood, and at the time of the hearing still stood, in her name only.

This Pettis street property, which included a two-family house and two small single houses, was purchased by the wife, with the husband's assent, about two years after their marriage, for $2000, of which she borrowed one half from her mother and the other half from her sister; and the title was put into her name only. She testified that it would have been put into the husband's name, if he had wished it so, but that he insisted that he did not wish it, because he had had trouble on the cars before he was married, which cost him some money, and he was afraid that he might get into trouble again with persons who "would come down" on the property, if it were in his name.

The wife attended to the renting and the collection of rents from this and the other real estate which they or she owned from time to time and to the payment of taxes; and she saw to it that the houses were kept in repair. She had had experience in such matters for a good many years be-

fore she was married, when she lived with her mother, who owned such rental property; and the husband had had no such experience. She never paid back the money borrowed from her mother for the purchase of the Pettis street property; but she paid her sister back in installments, as she could. From what source the money came for such installments was not shown.

Some years after the purchase of that property a parcel of improved real estate on North Main street was bought by the wife, with the approval of her husband; and the title was taken in her name only. The purchase price paid was $3150, and this, with perhaps some incidental expenses, was paid by the wife with $1000, which she borrowed from her mother, and $2200 which she borrowed from a Miss O'Mara and for which a promissory note signed by both the wife and husband was given.

This property was sold by the wife, about four years later, to a person who, as a possible purchaser of it, had been called to her attention by her husband. The sale price was $6500, which was received by the wife and disposed of by her as follows: $2000 was placed in her personal account in a Pawtucket bank to cover the $1000 which she had borrowed from her mother as a part of the purchase money for this property and the $1000 which she had previously borrowed from her mother as a part of the purchase price for the Pettis street property. She paid $2200 to Miss O'Mara in payment of that sum borrowed for the purchase price of this North Main street property as above stated. The remainder of the sale price of $6500 she placed in a joint account in the Industrial Trust Company in Providence in the names of herself and her husband.

From this joint account $1800 was loaned to a sister of the husband and that sister's husband. It was all paid back in installments, which were used by the respondent and her husband for general family expenses. There was no evi-

dence that the wife ever used any money from this joint account for any other purpose; and her testimony was that all of the money in that account had been used for the care of her husband in his illness and for other family expenses.

The husband complains that the wife loaned to one Sabourin, who had long been a friend of the husband, the sum of $3085 on a note to her, secured by a mortgage on real estate, and that the money so loaned was derived from the husband's earnings. But the wife's testimony, believed by the trial justice, was that the money so loaned was made up of three parts. The first was the $2000 which she had deposited in a Pawtucket bank, as above stated, to represent that amount borrowed by her from her mother and which had become her own money in the settlement of the estate of her mother, who had died in the meantime. The second part was a further sum, of $1000, which had come to her under her mother's will. The third part, $85, was other money belonging to her.

The husband complains that shares in a certain savings fund and loan association were taken out by the wife in her own name and paid for by her out of his earnings. Her testimony was that the monthly payments which were made on those shares were largely her own money; but that some were probably from his money, but she could not tell how much. She also testified that after her husband's accident and during his illness, nearly all the money that could be raised on those shares was used to pay the expenses of his sickness and other family expenses, leaving only $120 as the value of the remaining shares.

To prove a resulting trust by reason of the payment by one person of the whole or a part of the purchase price of property conveyed to another person, especially if the relation between these persons is that of husband and wife or of parent and child, the evidence must be clear, full and convincing. *Hudson* v. *White,* 17 R. I. 519, 529, 23 A. 57,

61; *Reynolds* v. *Blaisdell,* 23 R. I. 16, 19, 49 A. 42, 43; *Gooding* v. *Broadway Baptist Church,* 46 R. I. 106, 125 A. 211; *Peoples Sav. Bank* v. *Staples,* 46 R. I. 356, 358, 128 A. 196; Restatement, Trusts, § 458, and R. I. Annotations.

To establish, by reason of contributions to the purchase price, a resulting trust in any fractional part of property standing in the name of another as sole owner, it must be shown, by such evidence, that the claimant has contributed at least that fractional part of such purchase price. *O'Donnell* v. *White,* 18 R. I. 659, 29 A. 769; *Gooding* v. *Broadway Baptist Church, supra.* See also 3 Pomeroy, Eq. Juris. (4th ed.) § 1040. 1 Perry, Trusts and Trustees, (7th ed.) 203, § 131; and an article by Austin W. Scott, 40 Harv. L. Rev. 669, at 697. In these last two citations, *O'Donnell* v. *White, supra,* is cited among other cases.

After considering all the evidence in this cause and applying thereto the rules just discussed, we are of the opinion that there is no merit in any of the complainant's reasons of appeal.

The appeal of the complainant is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Frank F. Davis, Emile H. Ruch,* for complainant.

*Roger L. McCarthy,* for respondent.