**Lou ROSEMAN and Reta Roseman**

**v.**

**David B. SUTTER.**

**Civ. A. No. 89–0119 L.**

United States District Court,
D. Rhode Island.

April 27, 1990.

David A. Schechter, Providence, R.I., for plaintiffs.

R. Daniel Prentiss and Associates, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court for decision after a bench trial. The issue in the case is whether plaintiffs, Lou and Reta Roseman, are the equitable owners of a one half interest in a certain parcel of real property located at 474 Ocean Road in

the Town of Narragansett, Rhode Island. The current owners of the property, defendant, Dr. David B. Sutter, and his wife, Gael Sutter, purchased the real estate in January of 1984. They took and now hold sole legal title as tenants by the entirety.

Plaintiffs allege that prior to the conveyance of the Narragansett property to defendant and his wife, they reached an oral agreement with Dr. Sutter and Gael that the four of them would own the property together. In keeping with this agreement, plaintiffs assert that they made most of the down payment on the property and have continually made one half of the mortgage payments since then. In addition, plaintiffs claim to have paid all maintenance charges and provided furniture, furnishings and drapes for the home. Based on these alleged facts, plaintiffs contend that they hold equitable title to one half of the property located at 474 Ocean Road and that defendant and his wife are holding legal title to the real estate in trust for them. Plaintiffs, therefore, ask this Court to declare the existence of such a trust and to direct defendant to convey to plaintiffs by deed a one half interest in the property.[1]

Defendant denies that plaintiffs have any interest in the property located at 474 Ocean Road and has asserted a counterclaim (with a jury demand) alleging that plaintiffs are liable to him and his wife for their use of the property from January of 1984 to the present.

On January 17, 1990, after the counterclaim was severed from the main cause of action, a non-jury trial was commenced with regard to plaintiffs' claim for equitable relief. The trial lasted for one and one half days and after the conclusion of final arguments, the Court took the matter under advisement and gave the parties time to submit post-trial memoranda. Having heard the testimony, read the exhibits and studied the pre-trial and post-trial memoranda, this Court now makes the following determinations.

## BACKGROUND

Plaintiffs in this action, Lou and Reta Roseman, are the parents of defendant's wife, Gael Sutter. The Rosemans are residents of New York and have owned real estate in Narragansett since 1953. During the late summer of 1983, Dr. Sutter and his wife, who live in New Jersey, visited the Rosemans at their Narragansett home. At that time, the two couples discussed the purchase of a second home in Narragansett and ultimately decided that the property located at 474 Ocean Road be purchased.

There are two basic facts which are undisputed in this case. First, the parties stipulated that the property in question was conveyed by deed to Dr. Sutter and his wife as tenants by the entirety in January of 1984. Second, all parties agree that plaintiffs provided a total of $50,000 in cash to Dr. Sutter and his wife for the down payment on the property. The circumstances under which these two events occurred, however, are very much in controversy. Plaintiffs contend that they gave their "children" the $50,000 with the understanding that they would be equal partners in the ownership of the property. Defendant maintains, however, that the down payment was a gift from the Rosemans devoid of any condition that they would have an ownership interest in the summer home.

According to the testimony of Reta Roseman, she, her husband, Dr. Sutter and Gael all agreed that they would purchase the house together and that they would be equal partners. Mrs. Roseman stated that she agreed to have the title placed in the names of Gael and Dr. Sutter because Dr. Sutter said that it would be beneficial to him for tax purposes. Gael Sutter corroborated her mother's testimony and also indicated that prior to the purchase of the house, her husband told her that they should get the mortgage on the property and he would later sign a document stating

---

**1.** Plaintiffs have not named their daughter Gael Sutter as a defendant in this case because she has indicated a willingness to join in a conveyance of a one half interest in the property to them.

that they and the Rosemans were equal owners.[2]

Mrs. Roseman admitted at trial that she consulted with a Rhode Island attorney before the property on Ocean Road was purchased. The attorney, Samuel Fleisig, is Mrs. Roseman's nephew and she asked him personally to be the legal advisor with respect to the purchase. Both Mrs. Roseman and Mr. Fleisig attended the closing for the sale of the property at issue and neither questioned the conveyance to Dr. Sutter and his wife as tenants by the entirety. In fact, Mrs. Roseman's only voiced concern before and at the closing was to make sure that Gael's name was on the deed.

In addition to allowing the property to be conveyed to Dr. Sutter and Gael as tenants by the entirety, Mrs. Roseman also signed a statement declaring that she and her husband were "giving" their "children", David and Gael Sutter, the sum of $50,000 towards the down payment on the residence at 474 Ocean Road. Although Mrs. Roseman admits making this statement, she insists that there was an understanding between her and Dr. Sutter that the Rosemans and the Sutters would all be equal owners of the property. In support of this proposition, plaintiffs introduced the deposition testimony of Marie Lambert, an employee of the partnership with which Dr. Sutter was formerly associated who notarized the document mentioned above. Ms. Lambert testified, through her deposition, that when Dr. Sutter asked her to notarize the document in question, he said that he needed it because he was buying property *"with his in-laws."*

Dr. Sutter emphatically denies the existence of any understanding that the Rosemans would have an ownership interest in the property at 474 Ocean Road. He admits that the Rosemans gave him and his wife $50,000 toward the down payment but asserts that the money was intended as a gift with no strings attached. Plaintiffs do not dispute that Dr. Sutter and his wife took out a mortgage on the property in the amount of $217,500 in their names alone.

Dr. Sutter testified that he asked the Rosemans to sign the statement declaring the $50,000 as a gift because the bank from which he was getting the mortgage required it to establish that the purchase was not one hundred per cent financed. Subsequently, when Dr. Sutter filled out the application for the mortgage, he listed the $50,000 as "other equity" which was a "gift from parents."

Most of the other evidence introduced at trial concerned mortgage and other payments made by plaintiffs and defendant with respect to the property at 474 Ocean Road. Plaintiffs contend that when the property was purchased in 1984, they agreed to pay the Sutters $1,000 per month, which payments defendant would return at the end of the year, so that Dr. Sutter could show on his tax return that the property was rented. Gael Sutter explained that although her parents were half owners of the property, her husband agreed that they would not make mortgage payments in the first year because they had contributed such a large amount for the down payment on the home. Reta Roseman testified at trial that the money was never returned to them as promised. On the contrary, Dr. Sutter stated that the $1,000 payments he received from the Rosemans in 1984 were all returned to them at the end of the year.

Beginning in 1985, both parties agreed that the Rosemans were to begin paying half of the mortgage on the property. Plaintiffs indicated at trial that they agreed to make the payments because they were half owners of the property. Dr. Sutter testified, however, that he asked plaintiffs to begin contributing to the mortgage payments at that time because of their substantial use of the summer home. According to his testimony, defendant and his wife were only at the house for a week or two in the summer and occasionally on a weekend. Plaintiffs, on the other hand, used the home virtually every weekend (having rented their Narragansett summer

---

**2.** Although Mr. Roseman was present at the trial, he did not testify and thus could shed no light on the events that transpired prior to the purchase of the home.

house) and defendant felt that they should pay their share of the expenses.

The financial arrangement agreed upon between the parties was that the Rosemans would pay their share of the mortgage to the Sutters personally and defendant would pay the full amount to the bank every month. The evidence introduced at trial establishes that the Rosemans did make some payments of varying amounts to either Gael or Dr. Sutter between 1985 and 1989. From 1985 until 1988, however, the payments were not made consistently every month and, in certain instances, may have been related to expenses other tha' the mortgage payments. In 1988, plaintiffs did make approximately ten payments of $1,250 each (roughly half the amount of the mortgage payments) to Gael Sutter.

Both plaintiffs and defendant made payments with respect to the maintenance and upkeep of the Narragansett property. Again, plaintiffs contend that their expenditures are evidence of their half interest in the property. Defendant, on the other hand, suggests that whatever payments were made by plaintiffs reflected their contribution due to their extensive use of the property. The numerous checks introduced at trial by both parties show that both plaintiffs and defendant contributed to pay for the expenses associated with the property at 474 Ocean Road. The evidence does not establish with any degree of certainty that either party paid all or even most of the cost of maintaining the property.

In late 1988, the marriage of Dr. and Mrs. Sutter foundered and a petition for divorce was filed in January of 1989 by Gael. In February of 1989, plaintiffs brought this action claiming equitable ownership of a one half interest in the Narragansett property.

## DISCUSSION

Plaintiffs have advanced two legal theories upon which they base their claim to the equitable ownership of a one half interest in the property located at 474 Ocean Road in Narragansett, Rhode Island. First, plaintiffs allege that they hold equitable title to one half of the property under a theory of resulting trust. In addition, plaintiffs claim title through the existence of a constructive trust. Although these two theories are closely related, there are distinct considerations which apply to each and the Court will analyze each theory in turn.

A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein. Restatement (Second) of Trusts § 404 (1959); *See also Reynolds v. Blaisdell*, 23 R.I. 16, 18–19, 49 A. 42 (1901) (in order to establish the existence of a resulting trust, there must be proof that the claimant, while directing or permitting the conveyance of the legal title to the nominal purchaser, intended to retain the beneficial interest in himself).

The typical circumstances which traditionally give rise to an inference that the person taking title to a piece of property is not intended to have the beneficial interest therein are presented where a person pays the purchase price for the property and then directs the vendor to convey the title to another. In accordance with this general rule, the Rhode Island Supreme Court has held that "when the purchase money is furnished by one party and the deed taken in the name of another a resulting trust is established in favor of the one who pays the money, ..." *Cetenich v. Fuvich*, 41 R.I. 107, 116, 102 A. 817 (1918). Rhode Island law also provides, however, that where a person furnishes only a part of the money paid, "no resulting trust arises unless his part is some definite portion of the same and is paid for some aliquot part thereof." *Gooding v. Broadway Baptist Church*, 46 R.I. 106, 109, 125 A. 211 (1924). A general contribution towards the entire sum is not sufficient. *Id.* at 110, 125 A. 211.

■ Under Rhode Island law, the burden of proof is on a plaintiff to establish the existence of a resulting trust by evidence which is clear, full and convincing. *Desnoyers v. Metropolitan Life Insurance*

*Co.*, 108 R.I. 100, 272 A.2d 683, 689 (1971). Such evidence must establish that, at the time of the conveyance of the property, it was the intention and understanding of the person contributing the purchase money that he or she was to have the beneficial ownership in the whole or in a definite fractional part. *See Cutroneo v. Cutroneo*, 81 R.I. 55, 98 A.2d 921, 923 (1953). Thus, in the instant case, the burden is on plaintiffs to prove by clear, full and convincing evidence that at the time of the conveyance of the Narragansett property to the Sutters, they contributed $50,000 as an investment in the property with the intention and understanding that they would retain beneficial ownership of one half of the property. The evidence presented at trial in this matter simply does not support such a claim.

■ In determining the intent of the parties in the case at bar, the Court is aided by the well-established principle that where property is conveyed to one person and the purchase price is paid by the transferee's parent, the law presumes that the payment is a gift and a resulting trust will not arise. *See* Restatement (Second) of Trusts § 442 (1959). The Rhode Island Supreme Court has expressly adopted this presumption that a gift has been made in instances where the consideration for the purchase of a piece of property moves from a parent or "one who stands *in loco parentis* to the nominal purchaser." *Reynolds*, 23 R.I. at 19, 49 A. 42. This Court, therefore, must presume that the Rosemans' donation of $50,000 for the down payment on the purchase of the Ocean Road property was a gift to their "children". Although plaintiffs may rebut this presumption by clear and convincing evidence, *id.*, they have failed to do so in the instant case.

In attempting to rebut the presumption that the $50,000 was a gift, plaintiffs rely primarily on the somewhat vague and conclusory testimony of Reta Roseman that it was understood that the Sutters and the Rosemans would all be equal partners in the purchase of the property. Plaintiffs also rely on the testimony of plaintiffs' daughter, Gael Sutter, who, not surprisingly, voiced agreement with her mother. Finally, plaintiffs offered the deposition testimony of Marie Lambert who stated that Dr. Sutter told her he was buying property "with his in-laws in Rhode Island."

In contrast, Dr. Sutter testified that there was never any understanding or agreement that the Rosemans would have an ownership interest in the property. His contention that the $50,000 was a gift is firmly corroborated by Mrs. Roseman's signed statement expressly declaring that the contribution was a gift to plaintiffs' "children" and by the fact that both Mrs. Roseman and her attorney attended the closing and made no objection to the conveyance of the property to the Rosemans as tenants by the entirety. Furthermore, both Dr. Sutter and Gael Sutter signed the mortgage application which listed the $50,000 as "other equity" received as a "gift from parents." Although Dr. Sutter's alleged statement that he was buying property "with his in-laws" suggests that he may have understood that plaintiffs were to be part owners of the Narragansett home, plaintiffs' evidence, taken as a whole, is simply not sufficient to overcome the presumption that the Rosemans offered the $50,000 as a gift and not as an investment in the property.

■ Even if plaintiffs were able to rebut the presumption that the $50,000 was a gift to the Sutters, the evidence still does not establish the existence of a resulting trust because plaintiffs did not pay a definite portion of the purchase price. The Rosemans' contribution of $50,000 toward the down payment on the property at 474 Ocean Road was clearly not a payment of any definite portion of the purchase price. Similarly, the Rosemans' monthly contributions to the mortgage payments were never made consistently and did not represent half of the payments made by Dr. Sutter. In 1986 and 1987, for example, plaintiffs only made five payments to the Sutters over the entire two year period. It was not until 1988, four years after the purchase of the property, that plaintiffs began making regular monthly payments equal to approximately half the amount of the mortgage.

In the meantime, Dr. Sutter had been paying the mortgage every month, twelve months a year, since March of 1984.

In sum, plaintiffs' transfer of $50,000 to be used in conjunction with the purchase of a home followed by sporadic contributions to the mortgage payments over a five year period are far from sufficient to establish by clear and convincing evidence the existence of an agreement that they were to retain the beneficial ownership of one half of the property. On the contrary, the evidence is clearly consistent with the presumption that the initial $50,000 was intended as a gift from the Rosemans to help their "children" acquire the Narragansett property. Even without the aid of a presumption the Court would conclude on all the evidence in this case that the $50,000 contribution by plaintiffs was intended as a gift and that the subsequent payments made by the Rosemans toward the mortgage and for other expenses were understood and intended to be for the substantial use plaintiffs made of defendant's summer house.

Had the Rosemans anticipated the breakdown of the Sutter marriage, they may well have structured the purchase of this property differently. Indeed, they may have required that their names be placed on the deed. This Court, however, cannot consider what might have been, but must make its determination based on the circumstances that existed at the time of the conveyance. After a careful review of all the evidence, the Court concludes that the circumstances in this case do not warrant the imposition of a resulting trust upon defendant for the benefit of plaintiffs.

Plaintiffs argue that even if the Court finds that there is no resulting trust, the evidence supports a finding of the existence of a constructive trust. A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. *Desnoyers v. Metropolitan Life Insurance Company*, 272 A.2d at 690. The Rhode Island Supreme Court has held that the underlying principle of a constructive trust is the equitable prevention of unjust enrichment of one party at the expense of another in situations in which legal title to property was obtained (1) by fraud, (2) in violation of a fiduciary or confidential relationship, or (3) by testamentary devise or intestate succession in exchange for a promise to hold in trust. *Simpson v. Dailey*, 496 A.2d 126, 128 (R.I.1985). As with a resulting trust, the existence of a constructive trust must be proved by clear and convincing evidence. *Desnoyers*, 272 A.2d at 690.

There has been no suggestion in this case that the Sutters' title to the property in question was secured by fraud. Plaintiffs' only possible basis for claiming the existence of a constructive trust is to argue that Dr. Sutter obtained the $50,000 from the Rosemans through exploitation of a confidential or fiduciary relationship, and then violated that relationship by obtaining title to the house in only his and his wife's name. The evidence produced at trial clearly refutes any suggestion that the relationship between plaintiffs and Dr. Sutter was one of confidence, trust or reliance. Mrs. Roseman testified that she never relied on Dr. Sutter for any sort of advice, that he did not initiate the idea to purchase the property and that he did not persuade her to enter into the deal. Mrs. Roseman also admitted that she attended the closing on the sale of the property to make sure that her daughter's name was on the deed. At that time, both Mrs. Roseman and her attorney were aware of and gave their approval to the conveyance of the property to Dr. Sutter and his wife in the exclusive matrimonial estate of tenancy by the entirety. Based on these undisputed facts, it is clear that Dr. Sutter did not act in violation of any confidential relationship when he took title to the Narragansett summer home. *Cf. Matarese v. Calise*, 111 R.I. 551, 305 A.2d 112 (1973).

A constructive trust is an equitable remedy designed to prevent a party from being unjustly enriched. In the case *sub judice,* it would not be unjust to allow defendant and his wife to retain title to the property in question since they have been paying the mortgage on the property for more than

five years and have also paid for maintenance and upkeep on the home. Although plaintiffs contributed most of the down payment, part of some mortgage payments and other expenses associated with the real estate, the Court finds that their initial contribution was made as a gift and the subsequent payments were offered as compensation for their substantial use of the property. Such circumstances simply do not call for the imposition of a constructive trust in favor of plaintiffs.

*CONCLUSION*

For the reasons stated herein, the Court holds that plaintiffs Lou and Reta Roseman are not entitled to equitable ownership of a one half interest in the property located at 474 Ocean Road in Narragansett, Rhode Island. In short, decision is for defendant on the complaint. No judgment will be entered at this time. The Court will schedule defendant's counterclaim for trial on the jury trial calendar for June, 1990.

*It is so Ordered.*