# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-10801

United States Court of Appeals
Fifth Circuit

**FILED**

August 22, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

$4,480,466.16 in funds seized from Bank of America account ending in 2653

> Defendant,

RETAIL READY CAREER CENTER INCORPORATED,

> Claimant - Appellant

———————————

Appeal from the United States District Court
for the Northern District of Texas

———————————

Before ELROD, WILLETT, and DUNCAN, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

In this civil forfeiture proceeding, the United States seized millions of dollars from a Texas vocational school, alleging the funds were the fruits of a scheme to fleece veterans. The school intervened as a claimant, denied the government's allegations, and counterclaimed for constitutional tort damages against the government for ruining its business. The district court dismissed the school's counterclaims as a matter of law. Finding no authority from our court on the issue, the district court adopted the First Circuit's view that

No. 18-10801

claimants in an *in rem* forfeiture proceeding may *never* bring counterclaims. *See United States v. One Lot of U.S. Currency ($68,000)*, 927 F.2d 30, 34 (1st Cir. 1991) ("*$68,000*"). On appeal, the school protests that this categorical rule barring all counterclaims in civil forfeiture proceedings is incorrect. We decline to address that question, however, because the school's specific counterclaims are barred for a more fundamental reason—sovereign immunity—and so the district court lacked subject matter jurisdiction over them. We therefore vacate the district court's judgment and remand with instructions to dismiss the school's counterclaims for lack of subject matter jurisdiction.

I.

Appellant Retail Ready Career Center ("RRCC") was a private school in Texas offering a six-week "boot camp style" course to train students as Heating, Ventilation, and Air Conditioning ("HVAC") technicians.[1] According to RRCC, "[m]ost" students were "veterans who pa[id] for the course using their earned GI Bill benefit," but "courses were open to other participants" as well. In 2017, the United States Department of Veterans Affairs ("VA") began investigating whether RRCC had falsely claimed to be in compliance with the "85-15" rule. This rule prohibits the VA from approving a veteran's enrollment in a course "for any period during which more than 85 percent of the students enrolled in the course are having all or part of their tuition, fees or other charges paid for them by the educational institution or by VA[.]" 38 C.F.R. § 21.4201. The rule's purpose is to "minimize the risk that veterans' benefits will be wasted on educational programs of little value . . . and to prevent charlatans from grabbing the veterans' education money." *Cleland v. Nat'l Coll. of Bus.*, 435 U.S. 213, 219 (1978) (cleaned up).

---

[1] We draw these facts primarily from RRCC's verified claim, which we accept as true for purposes of reviewing the district court's grant of a motion to dismiss. *See Masel v. Villareal*, 924 F.3d 734, 743 (5th Cir. 2019).

2

No. 18-10801

In September 2017, federal warrants were issued to seize the money in RRCC's bank accounts—over $4.6 million—as the alleged proceeds of federal law violations. *See* FED. R. CIV. P., SUPPLEMENTAL RULE ("SUPP. RULE") G(3)(b) (explaining "the court—on finding probable cause—must issue a warrant" to seize movable property not in government control).[2] In October 2017, the government filed a complaint *in rem* seeking forfeiture of the funds under various fraud and conspiracy statutes.[3] After receiving notice of that action, RRCC filed a verified claim to the seized property. *See* 18 U.S.C. § 983(a)(4)(A) (providing "[a]ny person claiming an interest in the seized property may file a claim asserting such person's interest in the property"); SUPP. RULE G(5)(a) (setting out claim requirements). In its verified claim, RRCC alleged that the seizure occurred without prior notice or hearing; caused "an immediate and devastating effect on RRCC's business"; and forced RRCC to "close the school," dismiss employees without pay, and fly students home lest they be "stranded in Texas." RRCC also included two "constitutional counterclaims," which alleged the seizure violated the Fourth and Fifth Amendments and sought "damages to compensate [RRCC] for the destruction of its business."

The government moved to dismiss RRCC's counterclaims under Federal Rule of Civil Procedure 12(b)(6). Relying principally on the First Circuit's decision in *$68,000*, 927 F.2d 30, the government argued that "claimants in

---

[2] The government also seized other property not relevant to this appeal, including over $100,000 from five other bank accounts; real property located in Dallas, Texas; and seven luxury vehicles.

[3] *See, e.g.*, 18 U.S.C. § 981(a)(1)(C) (providing "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [certain federal laws]" is "subject to forfeiture to the United States"); *id.* § 981(a)(1)(D) (providing "[a]ny property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of [federal fraud statutes]" is "subject to forfeiture to the United States"); *id.* § 982(a)(3) (providing a court shall order that a person convicted of a federal fraud offense forfeit to the United States any property "which represents or is traceable to the gross receipts obtained, directly or indirectly, as a result of such violation").

3

civil-forfeiture cases may not file counterclaims against the United States, as they are merely claimants, not the party against which the suit is directed." The district court noted the parties had not cited "any binding Fifth Circuit authority" on this question, but found "persuasive" the First Circuit's reasoning in *$68,000*,[4] which had been followed by several district courts from other circuits.[5] The court therefore granted the government's motion to dismiss RRCC's counterclaims, "hold[ing] that, as a claimant in an *in rem* civil forfeiture action, RRCC cannot bring a counterclaim."

Meanwhile, the government struggled to state an adequate claim against RRCC's funds under the forfeiture rules. The district court dismissed the government's first amended complaint, finding its allegations insufficiently specific. The second amended complaint met the same fate. *See United States v. $4,480,466.16 In Funds Seized*, No. 3:17–CV–2989–D, 2018 WL 4096340, at *3 (N.D. Tex. Aug. 28, 2018) (ruling allegations in second amended complaint

---

[4] The entirety of the First Circuit's reasoning on this point consists of this citation-free half-paragraph:

> By definition, a counterclaim is a turn-the-tables response directed by one party ("A") at another party ("B") in circumstances where "B" has earlier lodged a claim in the same proceeding against "A." A forfeiture action is *in rem*, not *in personam*. The property is the defendant. Since no civil claim was filed by the government against [the claimant]—indeed, rather than being dragooned into the case as a *defendant*, he intervened as a *claimant*—there was no "claim" to "counter." Thus, [the claimant's] self-styled counterclaim was a nullity, and the court below appropriately ignored it.

*$68,000*, 927 F.2d at 34.

[5] *See United States v. 8 Luxury Vehicles*, 88 F. Supp. 3d 1332, 1337 (M.D. Fla. 2015); *United States v. Funds from Fifth Third Bank Account # 0065006695*, No. 13-11728, 2013 WL 5914101, at *12 (E.D. Mich. Nov. 4, 2013); *United States v. $22,832.00 in U.S. Currency*, No. 1:12 CV 01987, 2013 WL 4012712, at *4 (N.D. Ohio Aug. 6, 2013); *United States v. $43,725.00 in U.S. Currency*, No. 4:08–1373–TLW, 2009 WL 347475 at *1 (D.S.C. Feb. 3, 2009); *United States v. 1866.75 Bd. Feet*, No. 1:07cv1100 (GBL), 2008 WL 839792, at *3 (E.D. Va. Mar. 25, 2008); *United States v. Assorted Comput. Equip.*, No. 03–2356V, 2004 WL 784493, at *2 (W.D. Tenn. Jan. 9, 2004). The Sixth Circuit has recently adopted the First Circuit's rationale in *$68,000*. *See Zappone v. United States*, 870 F.3d 551, 561 (6th Cir. 2017).

No. 18-10801

were "insufficient to comply with Supp[lemental] R[ule] G(2)'s requirement that the complaint must 'state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial'"); SUPP. RULE G(2)(f). The parties continue to litigate that issue below.[6]

The issues before us on appeal concern only the fate of RRCC's counterclaims. On June 12, 2018, the district court entered a final judgment dismissing RRCC's counterclaims under Federal Rule of Civil Procedure 54(b), which RRCC timely appealed. We have jurisdiction to review that Rule 54(b) judgment. *See New Amsterdam Cas. Co. v. United States*, 272 F.2d 754, 756 (5th Cir. 1959) (dismissal of counterclaim, when plaintiff's claim is still pending, is non-appealable "absent a certificate under Rule 54(b)").

II.

We review the district court's judgment dismissing RRCC's counterclaims *de novo*, "accepting all well-pleaded facts [in RRCC's counterclaims] as true and viewing those facts in the light most favorable to [RRCC]." *SGK Props., LLC v. U.S. Bank Nat'l Ass'n*, 881 F.3d 933, 943 (5th Cir. 2018) (quoting *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007)). We may affirm the district court's judgment "on any basis supported by the record." *Total Gas & Power N. Am., Inc. v. FERC*, 859 F.3d 325, 332 (5th Cir. 2017) (citing *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014)); *see also Lee v. Kemna*, 534 U.S. 362, 391 (2002) ("[I]t is well settled that an appellate tribunal may affirm a trial court's judgment on any ground supported by the record.").

---

[6] Following RRCC's appeal in this case, the government filed its third amended complaint, in response to which RRCC moved for dismissal and summary judgment. The district court has not ruled on those motions. Instead, the district court granted the government's motion to stay the forfeiture action for 120 days during the pendency of a related, ongoing criminal investigation. The stay expired June 6, 2019, at which point the government moved to extend the stay for an additional 120 days. That motion is pending before the district court.

No. 18-10801

III.

On appeal, RRCC asks us to disclaim the district court's broad ruling that claimants in *in rem* civil forfeiture proceedings are barred, always and everywhere, from filing counterclaims. We decline to address that question, however, because RRCC's counterclaims are barred for a more fundamental reason: sovereign immunity.[7] As the government points out, the United States has not waived its sovereign immunity with respect to the particular claims asserted in RRCC's counterclaims—damages claims for violations of the Fourth and Fifth Amendments—and the district court therefore lacked subject matter jurisdiction over them. We agree.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941); 14 WRIGHT, MILLER & COOPER, FED. PRAC. & PROC. § 3654); *see also, e.g.*, *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251–52 (5th Cir. 2006) (en banc) ("The Constitution contemplates that, except as authorized by Congress, the federal government and its agencies are immune from suit." (citing *Hercules, Inc. v. United States*, 516 U.S. 417, 422 (1996))). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed," and any waiver "will be strictly construed, in terms of its scope, in favor of the sovereign." *Doe v. United States*, 853 F.3d 792, 796 (5th Cir. 2017) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Lane v. Peña*, 518 U.S. 187, 192 (1996)) (internal quotation marks omitted). The government argues that RRCC has identified no statute unequivocally

---

[7] Because we rule on the basis of sovereign immunity, nothing in our opinion should be read as approving the First Circuit's rationale in *$68,000* that counterclaims in *in rem* forfeiture proceedings are categorically barred. As the district court pointed out, no decision of ours has adopted that broad view and we have no occasion to address whether it is correct.

waiving the United States' immunity for the damages claims in RRCC's counterclaims. Specifically, RRCC seeks damages arising from the "unreasonable seizure" of its bank accounts in violation of the Fourth Amendment and from the lack of "notice and hearing" in violation of the Fifth Amendment's Due Process Clause. The government is correct.

In its reply brief, RRCC attempts to identify the required waiver in 28 U.S.C. § 2680(c). In that provision, Congress "re-waived" the United States' sovereign immunity under the Federal Tort Claims Act ("FTCA") for certain property damages claims arising out of forfeitures.[8] *See, e.g., Smoke Shop, LLC v. United States*, 761 F.3d 779, 782 (7th Cir. 2014) (explaining that in the 2000 Civil Asset Forfeiture Reform Act or "CAFRA" Congress "'rewaived' the government's immunity" under the FTCA "for tort actions stemming from law-enforcement detentions of property" under specific circumstances); *Foster v.*

---

[8] Section 2680(c) provides, in relevant part, that the FTCA immunity waiver applies "to any claim based on the injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if—

> **(1)** the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
>
> **(2)** the interest of the claimant was not forfeited;
>
> **(3)** the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
>
> **(4)** the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law."

28 U.S.C. § 2680(c)(1)–(4). The subsection cross-references 28 U.S.C. § 1346(b), which in relevant part provides that federal district courts have exclusive jurisdiction over post-January 1, 1945 money damages claims against the United States for

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.* § 1346(b)(1).

*United States*, 522 F.3d 1071, 1075 (9th Cir. 2008) (explaining "CAFRA . . . restored the waiver of sovereign immunity—or 're-waived' sovereign immunity—with respect to certain forfeiture-related seizures"). RRCC overlooks, however, that the FTCA waiver does not extend to "constitutional torts" like the Fourth and Fifth Amendment damages claims pled in RRCC's counterclaims. We have squarely recognized that "[c]onstitutional torts . . . do not provide a proper predicate for an FTCA claim." *Spotts v. United States*, 613 F.3d 559, 565 n.3 (5th Cir. 2010) (citing *FDIC v. Meyer*, 510 U.S. 471, 478 (1994)); *see also, e.g.*, *Coleman v. United States*, 912 F.3d 824, 835 (5th Cir. 2019) (the "source of substantive liability under the FTCA" must be the "law of the State" and not federal law (citing *Meyer*, 510 U.S. at 478)); *Sanchez v. Rowe*, 870 F.2d 291, 295 (5th Cir. 1989) (explaining "the FTCA does not provide a cause of action for constitutional torts" because "by definition constitutional torts are not based on state law" (cleaned up)). Thus, the FTCA waiver does not encompass the constitutional damages claims in RRCC's counterclaims, and the district court thus lacked jurisdiction over them.[9]

---

[9] We do not decide whether RRCC could bring valid FTCA claims as counterclaims in a civil forfeiture proceeding. *See, e.g.*, *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029–30 (5th Cir. 2011) (discussing administrative exhaustion requirements which are "a prerequisite to suit under the FTCA") (citing 28 U.S.C. § 2675(a); *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222–23 (5th Cir. 1989)). We decide only that the specific claims asserted in RRCC's counterclaims fall outside the CAFRA re-waiver and are therefore barred by sovereign immunity. Additionally, we note that neither the Tucker Act nor its companion, the Little Tucker Act, waive sovereign immunity over RRCC's claims. The Tucker Act provides a judicial avenue for "any claim against the United States founded . . . upon the Constitution." 28 U.S.C. § 1491(a)(1); *see also United States v. Bormes*, 568 U.S. 6, 11 (2012) (discussing Tucker Act). The waiver in the Tucker Act, however, "has been limited to apply only to the Takings Clause . . . because only that clause contemplates payment by the federal government." *Rothe Dev. Corp. v. U.S. Dep't of Defense*, 194 F.3d 622, 625 (5th Cir. 1999). Here, RRCC does not invoke the Tucker Act, and its Fifth Amendment claims are premised on an alleged due process violation, not the Takings Clause. *See, e.g.*, *Bellamy v. United States*, 7 Cl. Ct. 720, 723 (1985) (explaining claims court "has no jurisdiction over claims based upon the Due Process and Equal Protection guarantees of the Fifth Amendment,

No. 18-10801

RRCC also argues that the United States waives sovereign immunity simply by "initiat[ing] an *in rem* proceeding." RRCC cites no authority supporting that grandiose proposition. It points only to admiralty cases allowing a limited cross-libel against the United States when the United States sues another vessel for collision damages. *See United States v. The Thekla*, 266 U.S. 328 (1924); *United States v. The Paquete Habana*, 189 U.S. 453 (1903); *The Siren*, 74 U.S. 152 (1868)*; see also, e.g.*, *United States v. Shaw*, 309 U.S. 495, 502–03 (1940) (explaining that, in such cases, "it is necessary to determine the cross-libel as well as the original libel to reach a conclusion as to liability for the collision").[10] But RRCC directs us to no authority for the proposition that this distinct admiralty rule waives the United States' sovereign immunity whenever it institutes a civil forfeiture proceeding. Nor does RRCC direct us to any unambiguous statutory waiver of the United States' immunity under such circumstances.[11] As we have already explained, Congress did enact an unambiguous immunity waiver with respect to forfeiture proceedings, *see* 28 U.S.C. § 2680(c)(1)–(4), but it has no application here.

Finally, RRCC claims we cannot reach sovereign immunity for two reasons. First, RRCC points out the government did not raise the issue below. That is irrelevant: Whether the United States' sovereign immunity has been

---

because these constitutional provisions do not obligate the Federal Government to pay money damages" (quoting *Carruth v. United States*, 224 Ct. Cl. 422, 445 (1980) (cleaned up)).

[10] *See generally* 2 AM. JUR. 2d ADMIRALTY § 44 ("Whenever the United States sues for damage inflicted on its vessel or cargo, it impliedly waives its exemption from admiralty jurisdiction as to cross libels or counterclaims arising from the same transaction." (citing *The Thekla*, 266 U.S. 328; *The Western Maid*, 257 U.S. 419 (1922))).

[11] RRCC incorrectly points to the immunity waiver in 46 U.S.C. § 30903(a), but that statute also pertains only to certain admiralty claims involving the United States. *See, e.g.*, *MS Tabea Schiffahrtsgesellschaft MBH & Co. KG v. United States*, 636 F.3d 161, 165 n.1 (5th Cir. 2011) (explaining that "[t]he Suits in Admiralty Act (SAA) . . . provides the appropriate waiver for maritime tort claims against the United States" (citing 46 U.S.C. § 30903)).

9

waived is a question of subject matter jurisdiction we can address for the first time on appeal. *See, e.g., Lewis v. Hunt*, 492 F.3d 565, 568 (5th Cir. 2007) (holding that an appellate court may consider United States' sovereign immunity *sua sponte*, "[a]lthough the parties and the district court did not raise [it]"); *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006) (explaining that lack of waiver of United States' sovereign immunity under FTCA "deprives federal courts of subject matter jurisdiction"). Second, RRCC claims that addressing sovereign immunity would convert a without-prejudice dismissal below into a with-prejudice dismissal on appeal, which would be inappropriate without a cross-appeal. *See, e.g.*, *Jennings v. Stephens*, 135 S. Ct. 793, 798 (2015) (explaining "an appellee who does not cross-appeal may not 'attack the [district court's] decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary'" (quoting *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924))). RRCC is again mistaken. Claims barred by sovereign immunity are dismissed without prejudice, not with prejudice. *See, e.g.*, *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) (explaining that "[b]ecause sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice"); *see also, e.g.*, *United States v. Tex. Tech Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999) (same, citing *Warnock*); 9 WRIGHT & MILLER, FED. PRAC. & PROC. § 2373 (because dismissal for lack of jurisdiction does not reach merits, claim "must be considered to have been dismissed without prejudice"). Thus, we may, and do, rule that RRCC's counterclaims are barred by sovereign immunity.[12]

---

[12] Because we resolve the appeal on sovereign immunity grounds, we do not address the government's argument that RRCC's damages counterclaims are barred by 28 U.S.C. § 2465(b)(2)(A). Part of a provision addressing government liability for costs, fees, and interest when a claimant prevails in a forfeiture proceeding, § 2465(b)(2)(A) provides that "[t]he United States shall not be required to disgorge the value of any intangible benefits nor

No. 18-10801

IV.

Congress has provided various remedies for claimants like RRCC who assert that the United States has wrongfully seized their property in forfeiture proceedings. *See, e.g.*, *United States v. Khan*, 497 F.3d 204, 208 (2nd Cir. 2007) (by reforming the forfeiture laws in CAFRA, "Congress was reacting to public outcry over the government's too-zealous pursuit of civil and criminal forfeitures"). Under certain circumstances, claimants who "substantially prevail[ ]" in a forfeiture action may recover attorneys' fees, costs, and interest. *See* 28 U.S.C. § 2465(b)(1)(A)–(C). In some cases, they may sue the United States for property damages under the FTCA. *See* 28 U.S.C. § 2680(c)(1)–(4). What claimants may not do, however, is sue the United States for constitutional torts arising out of the property seizure. Congress has not waived the United States' sovereign immunity for damages claims of that nature. Because RRCC's counterclaims sought precisely those kinds of damages, we hold its counterclaims are barred by sovereign immunity.

We VACATE the district court's judgment and REMAND with instructions to dismiss RRCC's counterclaims for lack of subject matter jurisdiction.

---

make any other payments to the claimant not specifically authorized by this subsection." 28 U.S.C. § 2465(b)(2)(A).